**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **RODNEY EUGENE BLACK,** **#B86195,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 20-cv-00678-SPM** |
| **WEXFORD HEALTH SOURCES, INC.,** **DR. SIDDIQUI, and** **ANTHONY WILLS,** | |
| **Defendants.** | |

## <u>MEMORANDUM AND ORDER</u>

**MCGLYNN, District Judge:**

Plaintiff Rodney Black, an inmate in the Illinois Department of Corrections, filed this action pro se under 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 1). Plaintiff claims that he has been provided inadequate medical treatment for his back condition and associated pain.

Pending before the Court is a Motion for Summary Judgment filed by Defendants Siddiqui and Wexford Health Sources, Inc. ("Wexford") (Doc. 70), and a Motion for Summary Judgment filed by Defendant Wills (Doc. 73). Plaintiff has filed responses in opposition to the motions. (Doc. 77, 78). Defendants Siddiqui and Wexford have filed a reply brief. (Doc. 78). Now that this matter has been fully briefed, and for the reasons set forth below, the Court grants both motions for summary judgment.

### RELEVANT FACTS

Following his conviction, Plaintiff was transferred to Menard Correctional Center in April 2019. (Doc. 71-3, p. 9-10). Dr. Siddiqui's first appointment with Plaintiff was on July 3, 2019, for

a recurrent lesion on the sole of his right foot. (Doc. 71-1, p. 2). At the appointment, Plaintiff did not complain of back pain. (*Id.*).

From June through September of 2019, Plaintiff was seen six different times by other medical staff for complaints of back pain. (*See* Doc. 45-1).[1] During this time, he was initially treated with ibuprofen and acetaminophen and given low bunk and low gallery permits. On September 17, 2019, Plaintiff was scheduled to be seen by a doctor for his back pain, but he went to the commissary instead and missed his appointment. (Doc. 45-1, p. 17). Plaintiff was not seen for his back condition and pain by medical staff the remainder of the year, and he does not claim he submitted requests regarding back pain during this time. (*See* Doc. 76, p. 8).

Dr. Siddiqui next saw Plaintiff on December 9 and December 24, 2019, for other unrelated medical conditions. (Doc. 71-1, p. 2; Doc. 71-2, p. 3-4). Plaintiff did not voice complaints of back pain at either appointment. (*Id.*).

From January through April 2020, Plaintiff had six appointments with various medical staff for back pain.[2] Plaintiff was prescribed Tylenol and Mobic/Meloxicam. He was evaluated and approved for physical therapy, and x-rays were taken. Mobic/Meloxicam is a nonsteroidal anti-inflammatory drug ("NSAID") used to treat arthritis. (Doc. 71-1, p. 2). In April, after further complaints of pain, the Mobic/Meloxicam prescription was increased, and Plaintiff was prescribed Robaxin.

Plaintiff's first appointment with Dr. Siddiqui regarding his back condition was on May 20, 2020. (Doc. 71-1, p. 8; Doc. 71-2, p. 8). Dr. Siddiqui recorded in the medical records that Plaintiff reported that he had a history of chronic back pain for fifteen years. Dr. Siddiqui noted

---

[1] Plaintiff was seen by medical staff for complaints of back pain on the following dates: June 22, 2019, June 25, 2019, July 17, 2019, August 13, 2019, August 20, 2019, and September 13, 2019. (Doc. 45-1, p. 2, 3, 5, 9, 10-11, 14-16).
[2] Plaintiff was seen on the following dates: January 17, 2020, January 22, 2020, February 12, 2020, February 20, 2020, March 24, 2020, and April 13, 2020. (Doc. 45-1, p. 22, 24, 26, 28, 31, 33).

that the x-rays showed severe degenerative joint disease and that there were no spine deformities. Dr. Siddiqui's analysis was that Plaintiff had severe osteoarthritis. At this appointment, Plaintiff requested the medicine Tramadol, a controlled substance that belongs to the group of medications called opioid analgesics. (Doc. 71-2, p. 8; Doc. 71-3, p. 17). Dr. Siddiqui ordered for Plaintiff to continue taking Mobic/Meloxicam. (Doc. 71-2, p. 8).

On June 18, 2020, Plaintiff had an appointment with a nurse practitioner, who noted he had a steady gait and no obvious signs of mobility deficits. (Doc. 45-1, p. 39). He was advised to continue with the Meloxicam and physical therapy. (*Id.*).

On September 17, 2020, Plaintiff had another appointment with a nurse practitioner for his back pain. His low bunk and low gallery permit was renewed for one year, and the nurse practitioner noted to follow up with Plaintiff when he had completed physical therapy if he continued to have problems. (Doc. 45-1, p. 44, 49).

On that same day Plaintiff had a physical therapy session. (Doc. 71-2, p. 13). According to the medical records, Plaintiff's physical therapy appointments in 2020 were intermittent and not twice a week as prescribed. During this time, it was noted more than once that Plaintiff had poor compliance or was not compliant at all in his exercises. (Doc. 45-1, p. 38, 40-42). On July 8, 2020, the recorder noted that "no exercises were completed." (*Id.* at p. 41). At his finally session, Plaintiff reported having the "same symptoms." (Doc. 71-2, p. 13). It was also noted that Plaintiff gives "minimal efforts during session, also does not do exercises at all." (*Id.*). At this point, on September 17, his physical therapy sessions were discontinued. Plaintiff was advised to submit a request if the pain persists.

On January 21, 2021, Plaintiff was seen by a nurse for back pain, who prescribed him ibuprofen and referred him for further evaluation by a doctor. (Doc. 45-2, p. 1). Plaintiff was seen

by Dr. Siddiqui on February 1, 2021, who prescribed 600 mg tablets of ibuprofen and referred Plaintiff for another physical therapy evaluation. (Doc. 71-1, p. 3; Doc. 71-2, p. 28, 31).

Plaintiff was seen by a nurse practitioner on March 17, 2021, who ordered updated x-rays and renewed the Robaxin prescription. (Doc. 45-2, p. 5). The x-rays were taken that same day. (*Id.* at p. 6). Plaintiff was evaluated for physical therapy on March 24, 2021. (*Id.* at p. 10). At the appointment, the recorded noted that Plaintiff reported "muscle relaxers decrease his pain." The recorded also wrote that Plaintiff would benefit from physical therapy with one of the goals being to "decrease pain 1-2 levels." The recommended plan was for Plaintiff to have physical therapy two times a week for six weeks. (*Id.*).

Plaintiff next saw Dr. Siddiqui on March 29, 2021, for complaints of pain in his dorsal spine. (Doc. 71-1, p. 3; Doc. 71-2, p. 17). Dr. Siddiqui noted that the x-rays showed degenerative changes, no deformities of the spine, and Plaintiff had a normal gate and ambulated normally. Dr. Siddiqui also recorded tenderness of the low dorsal spine on pressure. He submitted a request to collegial review for approval of an MRI of the thoracic spine based on "pain dorsal spine x-rays degenerative disease." (Doc. 71-1, p. 3; Doc. 71-2, p. 23).

On April 5, 2021, a collegial was held regarding Dr. Siddiqui's request for an MRI. (Doc. 71-2, p. 22). An alternative treatment plan was made to continue with physical therapy for 8-12 weeks, and a trial of "long acting NSAID DOT, Cymbalta, or nortriptyline." (*Id.*).[3]

Dr. Siddiqui next met with Plaintiff on May 24, June 26, and July 21, 2021, for other medical issues. During these appointments, Plaintiff did not voice any complaints of back pain.

---

[3] According to Defendants, "Cymbalta (Duloxetine) is a selective serotonin and norepinephrine reuptake inhibitor (SSNRI) that can be used for pain caused by nerve damage associated with diabetes (diabetic peripheral neuropathy), fibromyalgia (muscle pain and stiffness), and chronic (long-lasting) pain that is related to muscles and bones," and "Nortriptyline is a tricyclic antidepressant. Antidepressants are mainstays in the treatment of chronic pain conditions, including arthritis and low back pain. Tricyclic antidepressants, including Nortriptyline, are the most common type of antidepressant used for pain." (Doc. 71, p. 4 n. 2-3).

(Doc. 71-1, p. 3).

On July 13, 2021, Dr. Siddiqui represented Plaintiff's case in collegial for an MRI of Plaintiff's spine, which was approved. (Doc. 71-1, p. 4; Doc. 71-2, p. 33). At some point, Plaintiff was seen by a specialist who prescribed Celebrex. (Doc. 71-3, p. 22).

**LEGAL STANDARDS**

### I. Summary Judgment Standard

Federal Rule of Civil Procedure 56 governs motions for summary judgment. "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012) (quoting FED. R. CIV. P. 56(a)). *Accord Archdiocese of Milwaukee v. Doe,* 743 F.3d 1101, 1105 (7th Cir. 2014). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). *Accord Bunn v. Khoury Enterpr., Inc*., 753 F.3d 676, 681-82 (7th Cir. 2014).

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Anderson*, 699 F.3d at 994; *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). As the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Cmty. Contacts, Inc*., 756 F.3d 542, 544 (7th Cir. 2014).

### II. Eighth Amendment Deliberate Indifference

The Eighth Amendment prohibits cruel and unusual punishment and deliberate

Page 5 of 12

indifference to the "serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) (citation omitted). A prisoner is entitled to "reasonable measures to meet a substantial risk of serious harm"—not to demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

In order to prevail on a claim of deliberate indifference, a prisoner who brings an Eighth Amendment challenge of constitutionally-deficient medical care must satisfy a two-part test. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). The first consideration is whether the prisoner has an "objectively serious medical condition." *Id. Accord Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). "A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Hammond v. Rector*, 123 F. Supp. 3d 1076, 1084 (S.D. Ill. 2015) (quoting *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)). It is not necessary for such a medical condition to "be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). *Accord Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (violating the Eighth Amendment requires "deliberate indifference to a *substantial* risk of serious harm") (internal quotation marks omitted) (emphasis added).

The second consideration requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *Id.* at 653. A plaintiff need not show the individual "literally ignored" his complaint, but that the individual was aware of the condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). "Something more than negligence or even malpractice is required" to prove

deliberate indifference. *Pyles*, 771 F.3d at 409. Deliberate indifference involves "intentional or reckless conduct, not mere negligence." *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) (citing *Gayton*, 593 F.3d at 620).

Assessing the subjective prong is more difficult in cases alleging inadequate care as opposed to a lack of care. Without more, a "mistake in professional judgment cannot be deliberate indifference." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016). The Seventh Circuit has explained:

> By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment. A doctor who claims to have exercised professional judgment is effectively asserting that he lacked a sufficiently culpable mental state, and if no reasonable jury could discredit that claim, the doctor is entitled to summary judgment.

*Id.* (quoting *Zaya v. Sood*, 836 F.3d 800, 805-06 (7th Cir. 2016)). This is in contrast to a case "where evidence exists that the defendant[ ] knew better than to make the medical decision[ ] that [he] did[.]" *Id.* (quoting *Petties v. Carter*, 836 F.3d 722, 731 (7th Cir. 2016)) (alterations in original). Additionally, a medical professional's choice of an easier, less efficacious treatment can also rise to the level of violating the Eighth Amendment where the treatment is known to be ineffective but is chosen anyway. *Berry,* 604 F.3d at 441.

ANALYSIS

For the purposes of summary judgment, Defendants do not dispute that Plaintiff had an objectively serious medical condition. The question is whether there is evidence in the record from which a rational jury could find that Defendants were deliberately indifferent to Plaintiff's medical needs.

### I. Dr. Siddiqui

Defendants argue that the facts of this case fall far short of demonstrating that Dr.

Siddiqui's actions "present so significant a departure from accepted professional standards or practices that [they] call[ ] into question whether the doctor actually was exercising professional judgment." (Doc. 71, p. 8) (citing *Pyles,* 771 F. 3d at 409). Defendants state that on the three occasions Dr. Siddiqui saw Plaintiff for back pain he prescribed two different NSAIDs, referred Plaintiff to physical therapy, and referred Plaintiff for an MRI. Dr. Siddiqui had assessed that Plaintiff had severe osteoarthritis, and his treatment decisions were medically reasonable as symptoms of osteoarthritis are usually well managed by a combination of pharmacologic and non-pharmacology treatments. (*Id.* at p. 11). Defendants argue that Plaintiff has failed to produce any evidence that the treatment Dr. Siddiqui provided was not proper, let alone deliberately indifferent, and therefore, Dr. Siddiqui is entitled to summary judgment.

Plaintiff argues that an MRI taken prior to his incarceration shows that has "three blown discs in [his] back and a narrowed disc in [his] neck, which was the source of [his] pain." (Doc. 76, p. 2). He asserts he was denied and delayed care. Despite telling "them over and over their pain management was not working," he was not approved go to a back and spine specialist until late 2021. (Doc. 77, p. 1).[4] Plaintiff states that Dr. Siddiqui was aware since September 2019 that he had serious medical problems, specifically pain management, and instead of having Plaintiff go to a back and spine specialist, he used the "same cookie cutter approach, ibuprofen, PT, and muscle relaxers." (Doc. 76, p. 11-12). Plaintiff asserts that Dr. Siddiqui did not give him the best alternative to be more pain free through surgery. (Doc. 77, p. 3).

Although Plaintiff was unhappy with the pain treatment he was receiving, there is nothing in the record to suggest that Dr. Siddiqui's decision to treat Plaintiff's osteoarthritis with different types of NSAIDs and physical therapy for over a year was "blatantly inappropriate." Defendants

---

[4] In Doc. 76, Plaintiff states he saw a specialist in 2022. (Doc. 76, p. 2).

have offered evidence that pain relieving medications such as acetaminophen and NSAIDs are common medications used to decrease the symptoms of osteoarthritis. (Doc. 71, p. 9) (citing *Osteoarthritis,* CLEVELAND CLINIC (Jan. 26, 2019), https://my.clevelandclinic.org/health/diseases/5599-osteoarthritis). Additionally, narcotic pain medications, such as Tramadol, are not recommended in the treatment of osteoarthritis due to the chronic nature of the disease and the possibility of tolerance and addiction. (*Id.*). Furthermore, once Plaintiff was referred to a specialist, the specialist's treatment plan follows Dr. Siddiqui's approach and diagnosis. Plaintiff states that the specialist prescribed him a new type of NSAID, Celebrex,[5] for his arthritis, and the medication has "relieved a lot of the pain." (Doc. 71-3, p. 22; Doc. 76, p. 12).

Nor could a reasonable jury find that Dr. Siddiqui continued in a course of treatment known to be ineffective. The first time Dr. Siddiqui saw Plaintiff, Plaintiff was participating in physical therapy, and the nurse practitioner had increased his Mobic/Meloxicam prescription the previous month. The second time, Dr. Siddiqui tried prescription strength ibuprofen and again referred Plaintiff to additional physical therapy. It was not clear, at this point, that physical therapy was ineffective, as Plaintiff had not fully participated in his sessions, and the sessions were not regularly conducted. At the final visit, Dr. Siddiqui referred Plaintiff for an MRI and then approved of an alternative treatment plain of treating him with different medications, along with continuing physical therapy. The fact that the treatment plans pursued by Dr. Siddiqui ultimately ended up being ineffective, does not support the contention that Dr. Siddiqui was deliberately indifferent. *See Norwood v. Ghosh,* 723 F. App'x 357, 365–66 (7th Cir. 2018) ("treating pain allows considerable room for professional judgment. Medical professionals cannot guarantee pain-free

---

[5] Celecoxib, brand name Celebrex, "is a nonsteroidal anti-inflammatory drug (NSAID) used to treat mild to moderate pain and help relieve symptoms of arthritis. *Drugs and Supplements: Celecoxib (Oral Route)*, MAYO CLINIC (Mar. 1, 2023), https://www.mayoclinic.org/drugs-supplements/celecoxib-oral-route/description/drg-20068925.

lives for their patients."). As there is there is no evidence that Dr. Siddiqui continued in a course of treatment obviously inadequate to meet Plaintiff's serious medical need, the motion for summary judgment will be granted as to Dr. Siddiqui.

## II. *Wexford Health Sources, Inc.*

The Court also grants summary judgment as to Wexford. In the Complaint, Plaintiff claims that he was denied constitutionally adequate medical care due to the collegial review process implemented by Wexford. (Doc. 1, p 56). In his response in opposition, Plaintiff contends that despite knowing that he had serious medical problems, Wexford continued in the same ineffective treatment plan and took three years to refer him to a specialist. (Doc. 76, p. 11-12).

When it comes to a municipal government or a corporate entity like Wexford, they cannot be held liable on a simple supervisory liability. *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014) (citing *Iskander v. Village of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982)). Instead, Plaintiff must show that the violation of his constitutional rights was caused by "(1) an express government policy; (2) a widespread and persistent practice that amounted to a custom approaching the force of law; or (3) an official with final policymaking authority." *Howell v. Wexford Health Sources, Inc.,* 987 F.3d 647, 653 (7th Cir. 2021) (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690-91 (1978); *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017)).

Plaintiff has failed to offer any evidence to show that a widespread Wexford policy contributed to or caused a delay in or denial of treatment for his back condition and pain. Plaintiff was not referred to collegial review for an MRI by Dr. Siddiqui until after filing this lawsuit, and there is no evidence that Dr. Siddiqui was acting pursuant to a policy or practice in not referring Plaintiff sooner. The request for an MRI was initially denied but then was approved three months

later, after Dr. Siddiqui represented Plaintiff's case. This one denial is not sufficient for the claim against Wexford to survive summary judgment. Plaintiff must offer "more proof than the single incident…to establish both the requisite fault…and the casual connection between the policy and the constitutional violation." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 236 (7th Cir. 2021) (quoting *City of Okla. City v. Tuttle*, 471 U.S. 808. 824 (1985)). Additionally, contrary to Plaintiff's arguments that medical procedures will "more likely than not…be disallowed" through the collegial review process (Doc. 1, p. 56), he has been approved for various offsite care for other medical issues through collegial review, including a sleep study, sleep apnea machine, Fibroscan tests, referral to a podiatrist, a podiatry follow-up, and a referral to a urologist.

Other than referencing collegial review, Plaintiff does not specify or provide evidence of any other policy that may have impacted Dr. Siddiqui's treatment decisions or caused a delay in the specialist referral. Because Plaintiff has not shown that his constitutional rights were violated by a Wexford practice or policy, summary judgment is appropriate.

### III. Warden Anthony Wills

Finally, the Court grants summary judgment as to Warden Wills. (Doc. 73). Defendant Anthony Wills, the warden of Menard, was added as a defendant in his official capacity only for the purpose of implementing any injunctive relief that may be ordered after Plaintiff had filed a motion for a preliminary injunction. (Doc. 37). Because Plaintiff has not demonstrated an issue of fact on his Eighth Amendment claim of deliberate indifference against Dr. Siddiqui and Wexford, summary judgment is warranted in favor of Warden Wills on any claims for injunctive relief.

### DISPOSITION

For the reasons stated above, the Court **GRANTS** the Motion for Summary Judgment filed by Defendants Dr. Siddiqui and Wexford Health Sources, Inc. (Doc. 70). The Court also **GRANTS**

the Motion for Summary Judgment filed by Defendant Wills. (Doc. 73).

Accordingly, this case is **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendants Siddiqui, Wexford, and Wills and against Plaintiff Black and to close this case.

**IT IS SO ORDERED.**

**DATED:   March 14, 2023**

_s/Stephen P. McGlynn_
**STEPHEN P. MCGLYNN**
**United States District Judge**